No. 18,815.

EMMA W. PARKER, *Appellant and Appellee,* v. JULIA A. MCLAIN, as Executrix, etc., *Appellee and Appellant.*

SYLLABUS BY THE COURT.

QUIETING TITLE — *Attaching Creditors* — *Fraudulent Conveyances—Husband and Wife—Evidence.* The evidence is examined in an action brought by a wife against an attaching creditor of her husband to quiet her title to the property attached, and is found sufficient to support the findings in her favor as to part of the property, and for the creditor as to another part.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed June 6, 1914. Affirmed.

*I. O. Pickering,* of Olathe, for Emma W. Parker.

*W. R. Thurmond,* of Kansas City, Mo., for Julia A. McLain; *C. W. Gorsuch,* of Olathe, *Hoyt A. Poorman,* and *Flavel Robertson,* both of Kansas City, Mo., of counsel.

The opinion of the court was delivered by

BENSON, J.: This is an action to quiet title arising out of litigation beginning in an action brought by Carey McLain against M. V. B. Parker in a circuit court of Missouri, resulting in a judgment on April 16, 1906, against Parker for a large amount. An action was commenced on that judgment on May 5, 1906, in the district court of Johnson county in which the following real estate situated in that county was attached, viz., a half section of land, called the home farm; seven lots comprising about eight acres in Olathe, called the homestead; and an undivided one-tenth of 120 acres, called the Fairview property. Other property also attached is not involved in this appeal. On a motion in that action by the wife of M. V. B. Parker, who is the plaintiff in this action, the district court dissolved the

attachment upon the home farm, and upon all of the homestead except lots 3 and 4. On October 3, 1911, a judgment was rendered in favor of the defendant, M. V. B. Parker, in the action referred to. That judgment was reversed by this court, and thereupon, on May 5, 1913, a judgment was rendered in that action against the defendant therein, M. V. B. Parker, for the amount of the Missouri judgment with accrued interest.

This action was begun August 30, 1907, and was tried in May, 1913. The district court stated findings and conclusions as follows:

"2. The title to lots 5, 6, 7, 8 and 9, block 2, Stevenson's First Addition to the city of Olathe, was conveyed to plaintiff by warranty deeds of record dated from 1869 to 1879, and the record title still remains in the plaintiff.

"3. The record title to fractional lots 3 and 4 in the same block was conveyed to M. V. B. Parker in 1880, and remained in him until 1911, when it was conveyed by said M. V. B. Parker to plaintiff.

"4. Plaintiff and M. V. B. Parker are husband and wife, and have lived since 1868 continuously in the dwelling house situated on lots 8 and 9, above described, and the lots mentioned in Findings 2 and 3 have been enclosed by the same enclosure since about 1880.

"5. The record title to the northwest quarter of section 29, township 13, range 24, was vested in the plaintiff by warranty deeds in 1876 and 1878, and the record title to the southwest quarter of the same section was vested in M. V. B. Parker by deed from J. C. Fairbanks, an uncle of the plaintiff, in 1880, and so remained of record until 1890, when M. V. B. Parker quitclaimed said southwest quarter to plaintiff. The deeds above mentioned were recorded near about said dates and the record title remains as above stated at this time.

"6. One A. Anderson holds title as trustee to the east half and the northwest quarter of the southwest quarter of section 26, township 13, range 23, known as Fairview Addition, for a number of parties, and in March, 1905, one Hoard made an assignment of a one-tenth interest in same to the plaintiff in writing.

"7. Carey McLain, defendant's testator, filed suit against M. V. B. Parker in the Circuit Court of Jackson county, Missouri, and on April 16, 1906, recovered a judgment for $17,840.60 and costs, and on May 5, 1906, brought suit on said judgment against M. V. B. Parker in the District court of Johnson County, Kansas, and attached all of the real estate described in these findings, together with a large amount of other property, this was case numbered 6724.

"8. The plaintiff in this case filed her motion in case 6724 to dissolve the attachment as to all of the property above described and on the 17th day of September, 1907, the Honorable C. A. Smart, sitting as judge *pro tem.*, dissolved the said attachment as to all the real estate described in Findings Nos. 2 and 5 above.

"9. Plaintiff has at all times claimed to be the owner of the real estate described in Findings Nos. 2 and 5, and has been in open possession of the same for from twenty-three to forty-five years.

"10. The interest in what is known as Fairview property described in Finding No. 6 was purchased by M. V. B. Parker and the assignment to the same was taken in the name of the plaintiff in this action.

"11. Fractional lots 3 and 4 were the property of M. V. B. Parker at the time of the levy of the attachment in case No. 6724.

### CONCLUSIONS.

"1. Plaintiff should have her title quieted as to all the real estate described in findings numbered 2 and 5.

"2. Plaintiff's title to fractional lots 3 and 4 mentioned in Finding No. 3 and to the Fairview property described in Finding 6, is subject to the attachment lien of the defendant Julia A. McLain, executrix."

Judgment was entered in favor of the plaintiff, quieting her title to the home farm and to lots 5, 6, 7, 8 and 9 of the homestead, and for the defendant that she had a valid lien upon lots 3 and 4 and the Fairview property. Both parties appeal.

The evidence consists mainly of the testimony of the plaintiff and her husband relating to the origin of the titles to the property in question. It appears that Mr. and Mrs. Parker settled in Lees Summit, Mo.,

in 1866, where they had a home and some other property. Some of that property was conveyed to the wife and some of it to the husband. They removed to Olathe about the year 1868.

Four of the homestead lots were purchased more than forty years before the trial. Upon two of them the family residence was established in the year 1868. Two houses have been built since; the one now occupied cost $3000. Another lot was added in the year 1879. These five lots were all conveyed to Mrs. Parker when purchased. The adjoining lots 3 and 4 were purchased in the year 1880, and conveyed to Mr. Parker, and by him conveyed to his wife in the year 1911. They have been in the same enclosure with the other lots since they were purchased, all being occupied and used together.

The north half of the home farm was purchased in the years 1876 and 1878 and conveyed to Mrs. Parker. In 1880 the south half was purchased and conveyed to Mr. Parker, and the title stood in his name until the year 1890, when he conveyed it to his wife. The land has been used as a farm ever since the purchase; occupied, it seems, by tenants.

A contract was made on June 14, 1904, by the owner of the Fairview land to convey it to A. Anderson, trustee for ten persons named in the instrument. It seems that a town-site addition was platted upon this land. L. L. Hoard, one of the ten persons named in the contract, took and held a one-tenth interest at the instance of Mr. Parker, having in fact no interest in the property. On the 27th day of March, 1905, Hoard assigned all his right and interest in the contract to Mrs. Parker, upon the request of her husband.

The evidence tends to prove that the home farm and lots 5, 6, 7, 8 and 9 of the homestead were purchased with money belonging to Mrs. Parker, which came to her by inheritance, although Mr. Parker managed the investments and attended to the business. No accounts

were kept of the money so received and invested, and neither Mr. nor Mrs. Parker was able to give definite dates and amounts. A detailed statement of the evidence upon this question would require considerable space, and is not necessary in view of the fact that it was sufficient, if believed, to uphold the findings. From the dates of the respective purchases Mrs. Parker has claimed to be the owner of the property, and, except the 160 acres conveyed to her husband in 1880, has held the title in her own name. Her possession all this time has been as complete as that of a wife would be whose husband was managing her property.

Referring now to the 160 acres last mentioned, the testimony tended to prove that it was conveyed to Mr. Parker for a share in money or property due to his wife by inheritance, and by mistake the deed was made to him instead of to her; and that this mistake was rectified by the conveyance to her ten years later. It will be observed that this was before any claims accrued against him in favor of McLain.

The good faith of the transactions by which these various titles were taken in the name of Mrs. Parker is vigorously assailed. It is insisted that the examination of Mr. Parker shows that the property was his; that the amount of Mrs. Parker's inheritance was trifling; that her alleged ownership is unreal and fictitious; and that at most she should be held only to have a community or partnership interest in the property jointly with her husband. These matters, however, are settled by the findings. Whether the inability or refusal of Mr. and Mrs. Parker to give details should be ascribed to the failure of memory by reason of the intervening years, or to evasion, as claimed, was necessarily determined by the district court, and the facts so determined, in the absence of erroneous rulings, conclude the inquiry. It must be remembered that the defendant represents a subsequent creditor, one whose claims could not have been anticipated in the years

from 1869 to 1880, when the investments in the name of Mrs. Parker were made. It can not be held as matter of law that Mrs. Parker held these titles as a mere trustee for her husband. Whether she held these titles in her own right because the purchases were made with her own money, or as gifts from her husband, or merely in trust for him, were questions of fact, settled by the findings in favor of the plaintiff's title.

Various rulings are complained of. A book, or memorandum taken from a book, kept by Mr. Parker in 1903, purporting to contain a "list of property owned by M. V. B. Parker and Emma Parker," was offered in evidence by the plaintiff and excluded, although various items thereof were admitted. The memorandum was produced, however, and Mr. Parker was thoroughly examined concerning it. Everything that it contained was necessarily brought to the attention of the court. Very little if any additional light would have been afforded by a formal admission of the writing in evidence. The same ruling was complained of in *Parker v. McLain*, 88 Kan. 657, 129 Pac. 939, where a branch of this general litigation was reviewed, and the same ruling was held not to be prejudicial. That view is adhered to. Another ruling complained of in that case, and in this, was the refusal of the court to compel Mr. Parker to disclose what other property he had. A contrary ruling might not have been erroneous, but it was within the discretion of the court to exclude the proposed testimony. As suggested in the opinion just cited, the inquiry would have been more appropriate upon proceedings against Mr. Parker himself supplementary to execution.

Some other rulings respecting the evidence are criticized, but the complaint does not appear to be substantial. A thorough examination of the witnesses was allowed, and it does not appear that the inquiries were unreasonably restricted.

Consideration will now be given to the contention of

the plaintiff that the findings of the district court against her respecting the Fairview property and lots 3 and 4 should be set aside. Here again we are concluded by the findings. While Mr. Parker testified with respect to the Fairview property, that he made the investment for his wife in the name of Hoard, and that he used her money in making the payment, the fact remains that he did not buy the property in her own name, but sought and induced Mr. Hoard to take it for him and not for her. She was holding much valuable property in her own name, and no good reason is apparent why she should not so hold this also. The district court was not concluded by Mr. Parker's testimony. All the circumstances were in evidence. This transaction was not remote in time from the matters involved in the Missouri judgment. The court, considering the whole situation upon all the evidence, determined the fact against the plaintiff, and that determination will not be disturbed.

Lots 3 and 4 were conveyed to Mr. Parker in 1880, and the title remained in his name when the attachment in the original suit of *McLain v. Parker* was levied, and was not conveyed to Mrs. Parker until after the first judgment in that suit. Although there was testimony that Mrs. Parker's money paid for the lots, the finding that they belonged, as the record showed, to her husband will, for the reasons already stated respecting the other findings, be sustained.

A motion is made by the defendant for leave to present upon this appeal the testimony of M. V. B. Parker and members of his family given in proceedings in bankruptcy instituted by him. The motion indicates that the testimony referred to, but not set out, is of the same nature as that taken in this case, and mainly that of Mr. Parker himself, relating to investments made by him in his wife's name, his bank accounts, purchases and transfers of other property and kindred matters upon which he was fully examined at the trial of this

action. It is not stated that the proffered evidence contradicts in material matters the testimony given in this action. Without determining the scope of section 580 of the code, no good reason appears why this court should reopen the case to consider the new evidence.

No sufficient reason appears for sustaining the appeal of either party, and the judgment is affirmed.